# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RHONDA A.,[1]                              )
                                          )
                    Plaintiff,            )
                                          )        CIVIL ACTION
v.                                        )
                                          )        No. 21-1168-JWL
KILOLO KIJAKAZI, [2]                      )
Acting Commissioner of Social Security,   )
                                          )
                    Defendant.            )
_____ )


## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614, Title XVI of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.     Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSI benefits on March 27, 2019.  (R. 15, 194).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in applying Soc. Sec. Ruling (SSR) 16-3p by failing properly to assess Plaintiff's allegations of limitations resulting from her mental impairments.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R.

§ 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

**II.      Discussion**

Plaintiff argues the ALJ found her "symptoms did not exist at the level of severity she alleged" and in that finding "primarily relied on noncompliance with conservative treatment, daily activities, and sporadic work history."  (Pl. Br. 8).  She claims the ALJ erred because her "findings are not supported by substantial evidence, … she failed to apply the Frey [v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987)] test, … she failed to recognize [Plaintiff's] limitations in participating in daily activities, and she failed to point to inconsistencies between the record and [Plaintiff's] allegations."  Id.  In the

remainder of her brief, Plaintiff explains how, in her view, the record evidence supports rationale contrary to that relied upon by the ALJ.

The Commissioner argues that the ALJ's decision applied the correct legal standard and is supported by substantial evidence.  She argues the <u>Frey</u> test does not apply to situations such as this, that "<u>Frey</u> involved the unique circumstance where an ALJ finds that a claimant is disabled, but—pursuant to 20 C.F.R. § 416.930—denies benefits as the claimant would not be disabled <u>but for</u> their noncompliance with treatment."  (Comm'r Br. 8-9).  She argues that the Commissioner promulgated SSR "18-3p which outlines how the agency distinctly applies 20 C.F.R. § 416.930 to deny benefits."  <u>Id.</u> at 9 (citing <u>Autumn G. v. Kijakazi</u>, Civ. A. No. 20-1206-JWL, 2021 WL 3488394, *5-6 (D. Kan. Aug. 9, 2021)).  She argues the ALJ provided many reasons to discount Plaintiff's allegations of symptoms including: inconsistencies with the medical evidence, treatment was routine and conservative, inconsistencies with reported daily activities, Plaintiff's presentation at the hearing, sporadic work history, inconsistencies in reports of illicit drug use, and an alleged inability to work but seeking employment suggesting a belief in an ability to work.  <u>Id.</u> at 9-13.

In her Reply Brief Plaintiff reiterates her arguments, arguing "the issue in this case centers around the ALJ's misunderstanding of the nature of Armstrong's admittedly severe mental impairments" not realizing that waxing and waning of symptoms is a part of Plaintiff's mental impairments.  (Reply 2).  She argues the <u>Frey</u> test should be applied in this case because the ALJ's finding "documented improvement with treatment and medication indicate her impairments are not as significant as alleged … implies that

[Plaintiff's] allegations are disabling and not supported by the evidence during periods of [non]compliance." (Reply 2). She argues the decision should therefore be read to imply a finding of disability but for the noncompliance with treatment and medication. Id.

### A.      Standard for Evaluating Allegations of Symptoms

An ALJ's evaluations of a claimant's allegation of symptoms are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's evaluations, the court will usually defer to the ALJ on matters involving witness allegations. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We

must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 416.929(c)(3).  These factors include:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[3]

---

[3] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 416.929).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 F. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 416.929 (2017) is still the proper standard to be used as explained in the regulations in effect on December 29, 2020, when this case was decided.  Nonetheless, to the extent that, and only to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 416.929(c)(3)(i-vii).

### B.   The ALJ's Relevant Findings

The ALJ found Plaintiff has mental impairments of bipolar disorder, an anxiety disorder, borderline personality disorder, and substance use disorder which are severe within the meaning of the Act and regulations.  (R. 17).  She evaluated Plaintiff's mental impairments in accordance with the Commissioner's psychiatric review technique and assessed her limitations in the four broad areas of mental functioning—the "paragraph B" criteria.  Id. at 18-19.  She found Plaintiff has a mild limitation in understanding, remembering, or applying information and a moderate limitation in the other three areas: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  Id.

The ALJ assessed Plaintiff with the Mental RFC to:

understand, remember, and carry out simple, routine, and repetitive tasks consistent with unskilled work.  Her tasks should not require teamwork. She should have only occasional, work-related interaction with co-workers and no required interaction with the general public.  She can adapt to occasional changes in routine and she should perform tasks that do not

8

require independent decision-making.  In addition to normal breaks, she
would be off-task about five percent of the workday.

(R. 20) (bold omitted).

In her RFC discussion, the ALJ stated she had considered Plaintiff's symptoms

"based on the requirements of 20 CFR [§] 416.929 and SSR 16-3p."  Id.  She

summarized Plaintiff's allegations and concluded that she found them "not entirely

consistent with the medical evidence and other evidence in the record for the reasons

explained in this decision."  Id. at 21.  She noted that at a mental health intake assessment

in June 2018 Plaintiff reported daily marijuana use and "declined to stop regardless of …

long-term effects of the drug use."  Id. 22.  She noted the mental health "treatment notes

reflect relatively normal mental status examinations when she is compliant with treatment

and medication" but also "reflect non-compliance with recommended treatment and

medication."  Id.  The ALJ explained her finding of improvement when compliant:

> In August 2018, she reported her anxiety was a little better on medication
> (Exhibit 2F/31 [R. 423]).  In November 2018, she reported her bipolar
> disorder was stable and that she was doing well with decreased depression
> (Exhibit 2F/27, 35 [R. 419, 427]).  In June 2020, she reported she had
> restarted mental health therapy and that it had been very helpful (Exhibit
> 23F/22 [R. 718]).  In August 2020, she reported improvement in her mental
> health symptoms with medication and therapy (Exhibit 23F/7 [R. 698]).

Id.

The ALJ found the objective medical evidence did not support Plaintiff's

allegations of disabling limitations and that it was necessary to address all the evidence in

accordance with 20 C.F.R. § 416.929 and SSR 16-3p.  Id. at 23.  She found Plaintiff's

activities of daily living inconsistent with her alleged limitations.  Id.  She found

Plaintiff's treatment routine and conservative, but that she was not "entirely compliant." (R. 23).  The ALJ found Plaintiff's work history detracted from her allegations because she had not worked in nine of the twelve years prior to her alleged onset and had only minimal earnings in the other three years.  Id., at 24.  The ALJ also pointed to two specific inconsistencies:

> during the hearing, the claimant testified she has not used illicit drugs since March 2020.  However, in June 2020, she reported she was using marijuana twice a month (Exhibit 24F/3).  Additionally, the claimant alleges she has been unable to work since March 2017.  However, in June and November 2018, she reported she was seeking employment, which would seem to indicate she believed she was capable of working at those times (Exhibit 2F/17, 27).  The inconsistencies in the record detract from the claimant's allegation of disability.

Id.

As is relevant to Plaintiff's mental impairments, the ALJ explained her evaluation of each of the medical opinions or prior administrative medical findings.  She found Ms. Bartek's opinions not persuasive because there are minimal treatment notes from Ms. Bartek, her opinions do not refer to the Plaintiff's substance abuse or its impact on the claimant's functioning, and her opinions are vague and do not assess any specific functional limitations.  Id. at 25.  She found the opinions of the state agency psychological consultants, Dr. Markway and Dr. Donovan persuasive because they have knowledge of the SSA disability program, their opinions are supported by the objective medical evidence, are based on their areas of expertise, and are consistent with the record as a whole.  She also found them supported by Plaintiff's relatively normal mental status exams, improvement with treatment and medication compliance, and wide range of

reported daily activities.  (R. 25-26).  She found the opinion of Mr. Elsbury, who performed a consultative examination of Plaintiff, is not persuasive because it is based on a single examination, is based primarily on Plaintiff's subjective reports, is inconsistent with the results of the mini-mental status examination Mr. Elsbury administered, and concerns an issue reserved to the Commissioner.  Id. at 26.  Finally, she found the opinion of Mr. Ireland not persuasive because the degree of limitation opined is not supported by the treatment notes, not consistent with Plaintiff's wide range of reported daily activities, and Mr. Ireland treated Plaintiff only on an intake assessment and a single follow-up appointment.

### C.    Analysis

It is important to recognize that it is Plaintiff's burden to prove that she is unable to perform work.  Blea, 466 F.3d at 907; Dikeman, 245 F.3d at 1184; Williams, 844 F.2d at 751 n.2.  Only at step five of the sequential evaluation process does it become the Commissioner's burden to show that there are jobs in the economy which are within the RFC assessed between steps three and four—when the burden of proof is Plaintiff's.  Id.; Haddock, 196 F.3d at 1088; see also, 20 C.F.R. §§ 416.920(e), 416.945(a)(5).  Thus, if Plaintiff believes the RFC assessed is not sufficiently restrictive she must point to record evidence which compels more restrictive limitations not merely to her own more restrictive allegations.

Plaintiff also appears to argue that an ALJ must point to record evidence demonstrating the error in each limitation alleged.  Were that the case, it would place the burden on the Commissioner to prove that a claimant did not have the symptoms alleged

or at least that the symptoms alleged were not disabling.  Rather, it is the claimant's

burden to prove that she cannot perform gainful work and that her limitations are

disabling.  In evaluating a claimant's allegation of symptoms, an ALJ need only explain

her rationale for discrediting a claimant's allegations and the inconsistencies she relied

upon in making that determination.  The question for the court then becomes whether the

rationale given is reasonable and supported by the evidence and whether the supporting

evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Perales, 402 U.S. at 401.

The court notes the starting point in its consideration is the final decision of the

Commissioner (in this case, the ALJ's decision), not what Plaintiff or the Commissioner

say the decision states or the evidence shows.  The court then determines whether the

proper legal standard was applied and whether substantial record evidence ("such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion") supports the findings in the decision.  To that point, Plaintiff argues the ALJ

erred in applying SSR 16-3p, but her only argument of error in the standard applied is

that the ALJ should have applied the Frey test when considering her noncompliance with

treatment and medication prescribed.  The court finds no error in this regard.

As Plaintiff suggests, in 1987 the Tenth Circuit stated what has become known as

"the Frey test:"  that, "In reviewing the impact of a claimant's failure to undertake

treatment, ... [the court] consider[s] four elements: (1) whether the treatment at issue

would restore claimant's ability to work; (2) whether the treatment was prescribed;

(3) whether the treatment was refused; and, if so, (4) whether the refusal was without

justifiable excuse." Frey, 816 F.2d at 517 (citing 20 C.F.R. § 404.1530).  As the Commissioner suggests, in 2000, the Tenth Circuit visited a similar issue in which the ALJ discounted the plaintiff's allegations, in part, because of a failure to take pain medication for allegedly severe pain.  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  The plaintiff in Qualls argued this finding was error because "he took pills his friends gave him," although he did not know what he was taking and did not indicate the frequency with which this occurred, and he argued that the Frey test should have been applied.  Id.  The court found the Frey test inapposite "because Frey concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment."  Id.  The court explained its finding:

> The ALJ here did not purport to deny plaintiff benefits on the ground he failed to follow prescribed treatment.  Rather, the ALJ properly considered what attempts plaintiff made to relieve his pain--including whether he took pain medication--in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling.

Id.  Thus, the Tenth Circuit has recognized two scenarios, a failure to undertake treatment, wherein the Frey test must be applied, and a failure to pursue treatment to relieve symptoms wherein the Frey test need not be applied.

However, in 2018 the Commissioner issued SSR 18-3p providing new guidance about how the SSA applies its "failure to follow prescribed treatment" policy from 20 C.F.R. §§ 404.1530 and 416.930.  The Ruling explains that the SSA

> will determine whether an individual has failed to follow prescribed treatment only if all three of the following conditions exist:
>
> 1. The individual would otherwise be entitled to benefits based on disability or eligible for blindness benefits under titles II or XVI of the Act;

2. We have evidence that an individual's own medical source(s) prescribed treatment for the medically determinable impairment(s) upon which the disability finding is based; and

3. We have evidence that the individual did not follow the prescribed treatment.

SSR 18-3p, 2018 WL 4945641, *2-3 (SSA Oct. 2, 2018) (emphasis added).

Here, the first condition has not been met.  The ALJ's finding Plaintiff noncompliant with treatment and medication (R. 22) was but one among several inconsistencies in the record upon which she relied to discount Plaintiff's allegations of symptoms.  In these circumstances it becomes clear the ALJ was relying on this fact as but one inconsistency with Plaintiff's allegations, and even absent that fact she would not have found Plaintiff disabled and there would be no reason to consider whether benefits should be denied because of a failure to follow prescribed treatment.  Plaintiff's appeal that the ALJ's finding improvement in Plaintiff's condition when she was compliant should be read to imply a finding of disability absent compliance ignores the other reasons the ALJ relied upon to discount Plaintiff's allegations of disabling symptoms.

Plaintiff's argument the ALJ failed "to adequately recognize [sic] the waxing and waning of [Plaintiff]'s symptoms with or without compliance" (Pl. Br. 9) and ignored her "primary reason for noncompliance, her severe impairments" relies on the reports of the consultative examiner, Mr. Elsbury; her treating social worker, Ms. Bartek; and her counselor, Mr. Ireland.  Id. at 11-14.  There are two problems with this argument.  First, Plaintiff cites no record evidence of "waxing and waning" of her symptoms or to authority showing that "waxing and waning" of symptoms is a feature of the mental

conditions from which she suffers.  To be sure, Plaintiff suffers from bipolar disorder

which is a mental disorder which cycles between mania and depression.  But the ALJ

recognized this severe impairment (R. 17) and that Plaintiff reports "rapid cycling bipolar

disorder with difficulty sleeping secondary to episodes of mania."  Id. at 20.  But that is

not "waxing and waning" of symptoms, it is the cycling of bipolar disorder and, as noted,

was recognized and considered by the ALJ.  Second, each of the medical opinions relied

upon by Plaintiff were found not persuasive by the ALJ, her reasons for those findings

were stated in the decision, and those reasons are supported by the record evidence.

Plaintiff does not show error in the ALJ's rationale in discounting those opinions.

Regarding her daily activities, Plaintiff argues:

> The ALJ cited [Plaintiff]'s reports of being able to provide her own
> personal care with minimal difficulties, prepare complete meals, clean, do
> the laundry, vacuum, wash dishes, drive, shop, watch television, journal,
> draw, fish, play music, help care for her 17-year-old and 18-year-old sons,
> shop, live independently, and care for her pet dog.  ([R.] at 23).  The ALJ
> did not address [Plaintiff]'s statements that she could not perform these
> activities when in an episode of depression, especially not without
> prompting and reminding from her mother who lived next door.  ([R.] at 47,
> 49).  … Further, none of [Plaintiff]'s daily activities were inconsistent with
> her allegations of mental limitations.

(Pl. Br. 15).

Plaintiff does not show any material mischaracterization of her daily activities by

the ALJ.  The only salient features of her testimony in the record cited in her argument

quoted above are that her boys and her dog "are my everything;" and that when she is in a

depressive cycle, "I'll sleep all day and then I'll sleep all night," and she can't get about

and can't clean her place; and her mom will keep on her sometimes.  (R. 47).  It also

reveals she changes clothes every day and bathes and brushes her teeth every three to four days (R. 49) as the ALJ noted.  Id. at 23.  She interacts with her mom and her boys daily, "especially when I am feeling depressed."  (R. 49).  The ALJ's discussion of Plaintiff's daily activities includes a discussion of her function reports and a third-party function report by her mother, her reports to Mr. Elsbury at her consultative examination and her testimony at the hearing.  Id. at 23.  Although claimant testified she sleeps all day and all night and can't get about or clean her place when she is depressed, she also testified she gets out to interact with her boys and her mom daily especially when she is depressed, she walks her dog several times a day, and her dog and her boys are her everything.  The court finds no material misrepresentation.  Moreover, even were daily activities omitted as a reason to discount Plaintiff's allegations, the ALJ provided many other reasons to discount Plaintiff's allegations of symptoms and the court "conclude[s] that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record."  Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004).

      Plaintiff's argument that the ALJ failed to point to inconsistencies between the record and her allegations of symptoms fails because, as noted above, the ALJ did point to such inconsistencies.  The ALJ noted the inconsistency in Plaintiff's report of drug use in that she testified at the hearing that she had not used illicit drugs since March 2020 but reported in June 2020 that she was using marijuana twice a month.  (R. 24).  She also noted that Plaintiff's report she was seeking employment in June and November 2018 is inconsistent with her allegation she was unable to work at that time.  Id.

Finally, Plaintiff argues the ALJ's reliance on her sporadic work history to question "whether her 'continuing unemployment is actually due to medical impairments'" is erroneous because she "explained at the hearing that her work attempt in 2017 and 2018 at a hotel was problematic due to her symptoms." (Pl. Br. 15) (quoting R. 24). Plaintiff's argument misunderstands the ALJ's reliance on work history. As the ALJ explained in her decision, between 2005 and 2017, "prior to her alleged disability onset date" (March 1, 2017) Plaintiff did not work nine years and "had only minimal earnings" in three years 2005, 2006, and 2013. (R. 24). That reliance had nothing to do with Plaintiff's work at a hotel in 2017 and 2018 after her alleged disability onset date.

The ALJ provided eight reasons to discount Plaintiff's allegations of symptoms: (1) In June 2018 Plaintiff reported daily marijuana use and "declined to stop regardless of … long-term effects of the drug use." Id. (2) The mental health "treatment notes reflect relatively normal mental status examinations when she is compliant with treatment and medication" and (3) also "reflect non-compliance with recommended treatment and medication." Id. (4) Plaintiff's activities of daily living are inconsistent with her alleged limitations. Id. at 23. (5) Plaintiff's treatment was routine and conservative. Id. (6) Plaintiff's work history detracted from her allegations. Id. at 24. (7) Plaintiff inconsistently reported drug use. Id. And, (8) Plaintiff reported she was seeking employment during a period she alleged disability. Id. Plaintiff challenged some but not all the ALJ's reasons. The court finds no reversible error.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 24, 2022, at Kansas City, Kansas.


s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**